**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-02714-CMA

EMILIO ANAYA,

    Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,

    Defendant.

---

**ORDER AFFIRMING ALJ'S DECISION DENYING SOCIAL SECURITY BENEFITS**

---

This matter is before the Court on review of the Commissioner's decision to deny the application of Plaintiff Emilio Anaya ("Plaintiff") for social security disability benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33. Jurisdiction is proper under 42 U.S.C. § 405(g).

## I. BACKGROUND

Plaintiff filed an application for disability benefits, alleging a disability onset date of May 21, 2007. Plaintiff was born on May 22, 1957, and was 49 years old on the date of his alleged disability onset. (AR at 26, 46.)[1] After his initial application was denied, Plaintiff requested a hearing, which was held on December 15, 2011, before an Administrative Law Judge ("ALJ"). (AR at 42.)

---

[1] Citations to the Social Security Administrative Record, which is found at Doc. # 7, will be to "AR" followed by the relevant page number.

Plaintiff testified that he previously worked doing maintenance and repairs at various companies. (AR at 51-55.) Since his alleged disability onset in May 2007, Plaintiff's only work was as a part-time car washer for two months in 2008, but he stopped working because the job put too much strain on his knees and shoulders. (AR at 50, 67.) In January 2009, he attended heating and air conditioning ("HVAC") maintenance training, but did not complete it because he could not afford the training and because he "got sick and depressed with [his] pain." (AR at 47-48.) In November 2009, Plaintiff completed training to fix mobile phones, then, worked with a friend in a store. However, there was not enough business to give him work. (AR at 48-49.) He testified that he did not go to the State of Colorado Division of Rehabilitation to get help finding work, but did seek job assistance through a program at Goodwill, which was unsuccessful. (AR at 49.) Plaintiff looked for work for years, but when employers learned of his medical condition, they would not hire him. (AR at 59.)

Plaintiff testified that he has "no education," but that when he applies for work, he says he attended through twelfth grade. (AR at 47.) English is his second language, but he testified that he can read at about "80-90 percent," but can write only a "little bit." He often asks his daughter, who is fluent in English, to help him. (AR at 56-57.) He also said that he attended classes at Emily Griffith Opportunity School to learn English and basic computer skills. (AR at 55.)

Plaintiff testified that he could lift eight to ten pounds and that if he tried to lift more, he would drop the item. (AR at 60.) He estimated that he can lift five pounds with each arm individually, but cannot reach higher than his head and would have

difficulty picking up a ten-pound object off of the ground.  (AR at 60-63, 65.)  Plaintiff testified that he has pain in both knees, but the left knee is worse than the right.  He can stand for approximately ten minutes, walk two or three blocks, and can sit for fifteen to twenty minutes.  (AR at 63-64.)  He testified that he has to sit in a recliner and elevate his feet approximately eight times during the day.  (AR at 64.)   Plaintiff stated that he feels worthless and was previously prescribed medication for depression, but stopped taking it because he did not have medical coverage.  (AR at 67.)

A vocational expert ("VE") testified at the hearing.  The ALJ posed several hypothetical questions to the VE, all assuming an individual with the same age, education, and work experience as Plaintiff.  The second hypothetical assumed an individual with the residual functional capacity ("RFC") ultimately assessed by the ALJ.  The VE testified that such a person could perform work as a cleaner and housekeeper.  (AR at 70-72.)

On January 23, 2012, the ALJ issued an unfavorable decision, denying benefits.  (AR at 26-37.)  The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2013.  In applying the five-step sequential evaluation process outlined in 20 C.F.R. §§ 404.1520 and 416.920 to determine whether Plaintiff was disabled, the ALJ determined that:

1. Plaintiff had not engaged in substantial gainful activity since his alleged onset date of May 21, 2007 [Step 1];

2. Plaintiff had the following severe impairments: "status/post right rotator cuff tear and right shoulder impingement, status/post right shoulder decompression and rotator cuff repair, status/post subsequent right shoulder anterior dislocation with closed reduction under anesthesia, status/post left

    rotator cuff repair (1996), bilateral knee degenerative joint disease, obesity, and chronic cervical strain" [Step 2];

3. Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 [Step 3];

4. Plaintiff had the RFC "to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b). He can lift and carry a maximum of 20 pounds occasionally using his bilateral upper extremities, and 10 pounds frequently, but he cannot lift more than 10 pounds using only his dominant right upper extremity. He can push and pull a maximum of 20 pounds occasionally and 10 pounds frequently. In an 8-hour workday with normal breaks, he can stand and/or walk for a total of about 6 hours and walk for a total of about 6 hours. He can do frequent climbing, kneeling, and crawling." [Step 4]; and

5. Plaintiff was not able to perform his past relevant work, but there are "other jobs existing in the U.S. and regional economies, which exist in significant numbers, that [he] is capable of performing" [Step 5].

Plaintiff requested that the Appeals Council review this portion of the ALJ's decision, which it declined to do. (AR at 1-3.) On October 3, 2013, Plaintiff filed his appeal to this Court of the Commissioner's final decision. (Doc. # 1.) Plaintiff filed his opening brief on May 12, 2014, the Commissioner responded on June 2, 2014, and Plaintiff replied on June 26, 2014. (Doc. ## 11, 12, 13.)

## II. **STANDARD OF REVIEW**

    The Court reviews the ALJ's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance. *Id.* (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)).

Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In so reviewing, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart,* 468 F.3d 615, 621 (10th Cir. 2006).

### III.  ANALYSIS

Plaintiff raises three arguments in support of his contention that the ALJ's decision should be reversed. However, because two of the arguments regarding Plaintiff's credibility are interrelated, the Court will address those arguments together. Thus, the Court will address, in turn, the following contentions: (1) the ALJ erred in assessing Plaintiff's credibility and complaints of pain; and (2) the ALJ failed to assign proper weight to the opinions of the treating, examining, and state agency physicians.

**A.   WHETHER THE ALJ ERRED IN ASSESSING PLAINTIFF'S CREDIBILITY AND COMPLAINTS OF PAIN**

Plaintiff contends that the ALJ erred by not properly considering "the factors required by SSR 96-7" in assessing his credibility and complaints of pain. Relatedly, Plaintiff contends that the ALJ "misstated significant evidence in an attempt to discredit the claimant." (Doc. # 11 at 2.) Plaintiff argues that these errors result in the ALJ's decision not being supported by substantial evidence. At the outset, the Court notes that this argument is poorly developed, with no citations to case law and only one citation to SSR 96-7. *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those contentions that have been adequately briefed for review."); *Miller v. Astrue*, 496 F. App'x 853, 855 (10th Cir. 2012); *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) ("The scope of . . . review . . . is

5

limited to the issues the claimant . . . adequately presents on appeal.")  Nonetheless, the Court will address Plaintiff's contentions.

"[C]redibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence."  *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2011) (quoting *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)).  Provided the ALJ links his credibility assessment to specific evidence in the record, his determination is entitled to substantial deference.  *Id*. at 910; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) (ALJ's decision "must contain specific reasons for the finding on credibility, supported by evidence in the case record").  Because the determination of credibility is left to the ALJ as the finder of fact, that determination is generally binding on a reviewing court.

SSR 96-7p provides a non-exhaustive list of factors that an ALJ considers, in addition to the objective medical evidence, when determining whether she finds Plaintiff's complaints of disabling pain credible.  Those factors include: (1) Plaintiff's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) medications and any side effects; (5) treatment, other than medication, that the individual has received; (6) measures other than treatment that Plaintiff uses to relive pain; and (7) any other relevant factors.  SSR 96-7P, 1996 WL 374186, *3.

Plaintiff contends that the ALJ erred because he failed to consider each of these factors in assessing Plaintiff's credibility and complaints of pain.  However, as the Commissioner points out, the ALJ is not required to set forth a formalistic factor-by-

factor recitation of the evidence, but must set forth only the specific evidence he relied upon in evaluating Plaintiff's testimony.  *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  Though the ALJ did not recite the list of factors, his analysis addressed several of these considerations as well as other relevant factors.  *See* (AR at 31-33) (objective medical evidence); (AR at 33) (location, duration, frequency, and intensity of pain); (AR at 33) (factors that precipitate and aggravate the symptoms); (AR at 31-33) (treatment history); (AR at 33) (other factors). The Court finds that the ALJ did address specific evidence he believed undermined Plaintiff's credibility and, therefore, his analysis was sufficient.  *See Lately v. Colvin*, No. 13-1131, 2014 WL 1227632, *3 (10th Cir. 2014) (order and judgment) (ALJ's discussion of evidence demonstrates record was adequately developed and precedent requires nothing more).

      Plaintiff contends that the ALJ ignored portions of Plaintiff's testimony and statements to a consulting physician that indicated Plaintiff experienced pain that would limit his ability to perform work.  However, "[t]he ALJ is not required to discuss every piece of evidence."  *Wall,* 561 F.3d at 1067 (quotation and citation omitted).  Plaintiff also argues that the ALJ misstated an October 25, 2007 treatment note as indicating that Plaintiff had "no pain" when in fact the doctor indicated that Plaintiff had "medial joint line pain."  Although the note does indicated that Plaintiff had medial joint line pain, it also indicates that Plaintiff's "knee only hurts in the medial side of the knee, and there was no abnormality there found on the MRI except for patellar tendinitis, which really does not hurt him at all today."  (AR at 269.)  Therefore, the ALJ's rendition of the

treatment note was not entirely inaccurate and certainly does not rise to the level of reversible error.

Plaintiff further argues that "the ALJ completely omits any mention of the numerous other treatment notes indicating that [Plaintiff] was experiencing significant knee pain." (Doc. # 11 at 7.) In so arguing, Plaintiff directs this Court to treatment notes that largely recite his own subjective complaints of pain. However, that Plaintiff made subjective complaints of pain to his doctors does not end the analysis. Instead, the ALJ considers both the subjective and objective evidence to determine whether the pain is, in fact, disabling. *See Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). This is precisely what the ALJ did. Thus, Plaintiff's argument that the ALJ did not specifically address each treatment note indicating Plaintiff's subjective complaints of pain is not a basis to reverse the ALJ's decision.

Next, Plaintiff argues that the ALJ misstated the reason Plaintiff failed to complete his HVAC training. Plaintiff notes that the ALJ omitted the portion of Plaintiff's testimony that indicates he quit the program because of his pain and instead focused on Plaintiff's statement that he could no longer pay for the training. Plaintiff's full testimony on this point is as follows:

> Q. Okay. So, why did you only go for three weeks?
> 
> A. At that time is when I got sick and depressed with my pain, and then I don't have enough money to pay for the rest of the classes, so they returned some of the money.
> 
> Q. Okay. So, are you saying you couldn't afford to continue, or what?
> 
> A. To continue and pay. Well, pay.

Q. You couldn't afford to pay for it?

A. Right.

(AR at 48.)  Thus, the ALJ's determination that Plaintiff stopped attending the HVAC class because of financial reasons is consistent with this testimony.  *See Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [A reviewing court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.") (citation and quotation omitted).[2]  The ALJ "clearly and affirmatively linked his adverse determination of [Plaintiff's] credibility to substantial record evidence . . . and [this Court's] limited scope of review precludes [it] from reweighing the evidence or substituting [its] judgment for that of the agency."  *Wall*, 561 F.3d at 1070.

**B.    WHETHER THE ALJ FAILED TO ASSIGN PROPER WEIGHT TO THE OPINIONS OF THE TREATING, EXAMINING, AND STATE AGENCY PHYSICIANS**

Plaintiff contends that the ALJ's RFC determination that Plaintiff can stand and walk for six out of eight hours, and frequently climb, kneel, and crawl, is not supported by the record.  Specifically, Plaintiff argues that the ALJ based his determination that Plaintiff's knee pain did not cause further limitations "largely on the evidence surrounding [Plaintiff's] worker's compensation claim in 2007."  (Doc. # 11 at 13.)

---

[2] The Court similarly finds unpersuasive Plaintiff's allegation that the ALJ misstated facts when he said Plaintiff reported he could lift twenty-five pounds overhead, but Plaintiff actually reported that he could lift twenty-five pounds "rarely."  *See* (Doc. # 11 at 17) (citing AR 34, 502).

9

However, the doctors examining Plaintiff for this claim determined that his knee pain was not work-related, and, accordingly "did not treat it in connection with the worker's compensation claim." (*Id.*)   Thus, Plaintiff argues that the ALJ improperly relied on a September 2010 opinion of a non-examining, non-treating DDS physician and Dr. Fall's 2007 Maximum Medical Improvement ("MMI") report.  Plaintiff states that both the DDS physician and the ALJ "apparently" found it significant that Dr. Fall's MMI worker's compensation report did not assess any impairment of the left knee.[3]  Yet, "Dr. Fall did not assess permanent work restrictions pertaining to [Plaintiff's] knee . . . [because his] severe degenerative joint disease had been determined to be a pre-existing condition, rather than an 'occupational disease' . . . ." (Doc. # 11 at 15.)

First, it is Plaintiff's burden to prove he is disabled.  *See Castine v. Astrue*, 334 Fed. App'x 175, 179 (10th Cir. 2009) (order and judgment).  Thus, to the extent Plaintiff points to a lack of evidence of knee-related limitations because doctors did not treat

---

[3] Plaintiff takes issue with the DDS physician's statement that Plaintiff's arthritis, including in his knee, is "not supported, so carr[ies] no weight," despite various notations that Plaintiff had arthritis and degenerative joint disease.  *See, e.g.,* (AR at 273, 279, 480, 597, 599).  The ALJ did not adopt this statement in his decision and, in fact, included bilateral knee degenerative disease as a severe impairment at Step Two.  Moreover, the ALJ assessed greater limitations than given by the DDS physician.  *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[I]f a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit[.]").  Therefore, the ALJ did not adopt the DDS physician's findings. Nonetheless, because "[e]vidence is not substantial if it is overwhelmed by other evidence in the record," *Grogan*, 399 F.3d at 1261-62, the Court construes this argument as a contention that overwhelming evidence demonstrates that the ALJ should have included limitations relating to the condition of his knees.  Although there was objective evidence that Plaintiff suffered from degenerative changes to his left knee, various examinations also showed that he did not suffer gross instability, had a full range of motion, and moved off and on examination tables without assistance.  *See, e.g.,* (AR at 313, 316-17, 538-39, 642).  Accordingly, evidence of Plaintiff's knee problems does not overwhelm the ALJ's determination that Plaintiff did not suffer functional limitations.

Plaintiff for pain as a part of his worker's compensation claim, the Court is not persuaded that this requires reversal.  Second, even if Dr. Fall did not opine on knee-related limitations because he considered them outside of the purview of Plaintiff's worker's compensation claim, Dr. Fall did examine Plaintiff's knees, which were negative for significant objective findings.  (AR at 266) ("Examination of the bilateral knees reveals no erythema or swelling. Range of motion is symmetric, which is 0 to 120 degrees secondary to subcutaneous tissue.  There is no ligamentous instability.  There are no meniscal signs.")  Third, the ALJ accurately noted that following Plaintiff's treatment related to his worker's compensation claim, "[n]o other limits have been given by any treating medical source since Dr. Fall and Dr. Cogan [who agreed with Dr. Fall's assessment] . . . ."  (AR at 32.)

Plaintiff also argues that the ALJ improperly rejected the opinion of consulting examiner, Dr. Wright, whose assessed limitations that would limit Plaintiff to sedentary work.  The ALJ is required to weigh every relevant medical opinion she receives using the factors in 20 C.F.R. § 404.1527(c).  After considering these factors, the ALJ must "give good reasons in [the] notice of determination or decision" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2). "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Watkins v. Barnhart,* 350 F.3d 1297, 1301 (10th Cir. 2003) (quotation marks omitted).

In the instant case, the ALJ properly considered whether Dr. Wright's opinion was consistent with and supported by the record as a whole.  *See* 20 C.F.R. §§ 404.1527(c)(4) (consistency); 404.1527(c)(3) (supportability).  Indeed, the ALJ stated

11

that Dr. Wright had limited medical records to review and that his opinion was contrary to the weight of other medical opinions and the overall evidence of record. (AR at 33.) Moreover, the ALJ observed that Dr. Wright's examination of Plaintiff's knees revealed no objective findings; yet, Dr. Wright assessed restrictive limitations, stating that Plaintiff could not bend, squat, or crawl. (*Id.*)  In essence, Plaintiff asks this Court to reweigh the evidence, which it cannot do. *See Salazar,* 468 F.3d at 621. The ALJ's decision is supported by substantial evidence.

## IV.  **CONCLUSION**

Accordingly, it is ORDERED that the ALJ's denial of social security disability benefits is AFFIRMED.   Each party shall bear its own costs and attorney fees.

DATED:  February __12__, 2015

BY THE COURT:

*[signature]*

_____
**CHRISTINE M. ARGUELLO**
United States District Judge